## In re GOLDBERG et al.

United States District Court
S. D. New York.
April 30, 1951.

Nichols & Belford, New York City, for petitioners.

Nathaniel L. Goldstein, Atty. Gen. of New York, Murray Sylvester, Asst. Atty. Gen., for respondent.

IRVING R. KAUFMAN, District Judge.

A dispute arose here between the widow and children of the bankrupt Abraham Goldberg and the State of New York as to a fund on deposit with the Treasurer of the United States in the sum of $3447.77. The petitioners are the distributees of the deceased bankrupt. The State of New York asserts that the fund has escheated and should be paid to it pursuant to the Abandoned Property Law of the State of New York, McK.Consol.Laws, c. 1. The State of New York further states that proceedings are to be conducted pursuant to the Abandoned Property Law of the State of New York and that the distributees can assert whatever claim they have to the funds in that proceeding.

An involuntary petition in bankruptcy was filed herein on March 16, 1921. Herman Goldberg, one of the bankrupts, filed an answer denying that he was a member of the bankrupt firm. On June 15, 1921 a composition was offered herein by the other bankrupt, Abraham Goldberg, doing business in the name of the bankrupt firm, payable in the sum of 25% of the claims proved and allowed. Said 25% was made up of 10% cash and 15% notes. Certain claims were objected to and disputed by the bankrupt. The order of Judge Julius N. Mayer, dated October 6, 1921, confirming the composition, provided that payment be made out

of the composition offer in the following manner:

(1) That payment be made of 10% cash and 15% in notes to the creditors whose claims were allowed;

(2) That moneys and notes representing 10% and 15% respectively of the disputed claims be retained and that a Referee, Harold P. Coffin, shall hear and determine such claims.

(3) That the balance remaining on deposit be paid over to M. G. & S. Co., Inc., the assignee of the bankrupts, to which corporation the moneys had been assigned and ordered paid by the bankrupts, in accordance with a stipulation.

(4) That the Receivers turn over to M. G. & S. Co., Inc., all of the assets belonging to the bankrupts which came into their possession and all moneys remaining in their possession after paying the moneys required to be paid and disbursed by them as above, to the said M. G. & S. Co., Inc., to which the same had been assigned and ordered transferred and delivered.

By stipulation dated August 15, 1921, Abraham Goldberg consented to the above. The stipulation among other things contained a provision directing the Receiver to turn over to M. G. & S. Co., Inc., several items "as well as all moneys left in the hands of the Receiver or Receivers after all administration expenses are paid."

The record discloses that none of the creditors whose claims were objected to attempted to establish their claims. The bankrupt Abraham Goldberg died intestate and his distributees, the petitioners herein, make claim to the fund which had not been claimed by the creditors whose claims were objected to.

By order of this Court the dispute was referred to Robert P. Stephenson as a Special Master to take proof of the allegations in the petition and of the right of petitioners to payment of the balance in the estate. The Special Master concluded that the petitioners as distributees of Abraham Goldberg had not established their right to these funds since the evidence showed that Goldberg assigned and directed the same to be turned over to M. G. & S. Co., Inc. The

distributees contend that the Special Master was in error in holding that the terms of the composition order required payment to M. G. & S. Co., Inc., and that the reference in the report to a stipulation "assigning" the property was in error since the only way the bankrupt estate could be distributed was by order of the court and the stipulation by itself had no effect.

I cannot agree with this contention. The distributees in effect contend that a question exists as to what was intended by the order dated October 6, 1921. If a question does exist, it is proper, indeed reasonable, to examine the surrounding circumstances which led to the signing of the order. It seems to me that the best proof of what was intended is the stipulation or agreement which the bankrupt himself had executed, for the order was founded upon such stipulation. This stipulation has already been referred to and unequivocally authorizes the Receiver to turn over to M. G. & S. Co., Inc. moneys left in the hands of the Receiver after all administration expenses were paid.

Often, it has been said that a composition is in effect a contract between the debtor and his creditors by which he obtains a settlement of the claims against him by paying an agreed sum into court for distribution to such creditors by order of the Court. Upon confirmation of the composition or agreement the debtor receives as consideration for his agreement what is in effect a discharge from bankruptcy.

In this case it appears that the debtor completely divested himself of all title to the 10% in cash and 15% in notes and that he intended that that be the case. Indeed, it would appear that if it were not the case, that the order of Judge Mayer and the stipulation of the bankrupt, Abraham Goldberg, would have provided that the funds which had been retained to pay the disputed claims would return to the bankrupt, Abraham Goldberg, if the claims were not allowed. Instead, the contrary intention appears. Indeed, the deceased must have intended that this would be the effect of the order and his stipulation, for until the time of his death, March 19, 1945, almost 25

years after he executed the stipulation referred to, and almost 24 years after Judge Mayer's order, he made no claim to these undistributed funds.

I cannot agree with the rather strained reasoning of the petitioners that the order of composition excluded the fund now on hand from the direction to pay M. G. & S. Co., Inc. and that M. G. & S. Co., Inc. was to receive only the balance after (1) certain payments were made to creditors not in dispute and (2) a reserve set up for the creditors whose claims were disputed.

Instead, I believe that the records reveal rather conclusively that there was no segregation of funds as the petitioners now assert but rather that payment would be made in the manner indicated and if for one reason or another the payments were not made, then the "balance" remaining on hand would be turned over to M. G. & S. Co., Inc. It is a reasonable assumption that if there were sums to which the bankrupt believed he was entitled, he, or his attorney, would have taken steps to obtain same prior to his death in 1945. See In re Vulcan & Reiter Co., D.C.S.D.N.Y., 1948, 80 F.Supp. 286, 290.

I do not agree with the assertion by the petitioners that the instant case is akin to one where a bankrupt has deposited a sum beyond the amount actually required. The brief of the petitioners refers to a portion of Judge Leibell's opinion in the Vulcan case, 80 F.Supp. at page 287, in which he quoted from the case of In re Kelley, D.C. Mass., 1915, 223 F. 383, 384: "It is not uncommon for a bankrupt offering composition to deposit with the clerk something beyond the amount actually required. Such surplus is returned to the bankrupt at the conclusion of the proceedings. The same disposition is made of unclaimed dividends, as was decided in this district. In re Lane, D.C., 125 F. 772."

The argument might be tenable were it not for the agreement and order to turn over the balance, or alleged "surplus" to M. G. & S. Co., Inc. I would say that the conclusion reached by the Special Master was not erroneous and I must conclude that the petitioners have not established their right to the funds in issue.

The application of the Special Master for an allowance of $100, said allowance to be paid to the Clerk of the Court for the Referee's Salary Fund, is granted.